**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **ED CV 26-811-JFW(E)**                              Date:  March 5, 2026

Title:      Cesar Bonilla *-v-* Kristi Noem, et al.

---

**PRESENT:  HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly** | **None Present** |
| **Courtroom Deputy** | **Court Reporter** |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
              None                                                                None

**PROCEEDINGS (In Chambers):   ORDER DENYING PETITIONER'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [filed 2/19/26; Docket No. 4]**

On February 19, 2026, Petitioner Cesar Bonilla ("Petitioner") filed an *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Application").  On February 24, 2026, Respondents Kristi Noem, Todd Lyons, Pam Bondi, David Gomez, Fereti Semaia (collectively, "Respondents") filed their Opposition.  On February 25, 2026, Petitioner filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for March 9, 2026, is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

I.      **Factual and Procedural Background**[1]

        A.      **Factual Background**

Petitioner was born in el Progresso, Honduras, and is a citizen of Honduras.  When he was sixteen years old, Petitioner's mother and brother were murdered by a man with a machete because of Petitioner's mother's affiliation with a certain political party.  Petitioner's mother had previously reported this man to the police for threatening Petitioner and Petitioner's brother at their home with a gun.  After Petitioner's mother and brother were murdered, this same man shot Petitioner, striking him in his right foot.  After he was released from the hospital, Petitioner decided to leave Honduras for the United States because he feared for his life and did not have any other

---

[1]  Although the allegations are not verified, the Court has included allegations from Petitioner's Petition, Application, and Reply in order to provide adequate background.

                                                                      Initials of Deputy Clerk   sr

family in Honduras.[2]  In approximately November 1998, Petitioner entered the United States without being inspected, admitted, or paroled by an immigration officer.

On November 26, 2007, Petitioner was served with a Notice to Appear (Form I-862), regarding removal proceedings.  On September 12, 2012, an Immigration Judge in Los Angeles ordered Petitioner removed, but granted a withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), preventing his removal to Honduras based on a finding that Petitioner's life or freedom would be in danger.  On October 30, 2012, Petitioner reported in person to United States Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") and was served an Order of Supervision ("OSUP").

On January 7, 2026, Petitioner reported to ICE ERO as part of a scheduled appointment under OSUP.  According to Respondents, ICE ERO conducted a file review of Petitioner's case, which showed a final order of removal, no pending appeals, and a pending application under the Violence Against Women Act ("VAWA") with the United States Citizenship and Immigration Services ("USCIS")[3], and took Petitioner into custody pursuant to the final order of removal.[4]  Petitioner was then transported to the Adelanto ICE Processing Center ("Adelanto") in Adelanto, California.

Respondents state that Petitioner was given a Notice of Removal, indicating that he was being processed for removal to a third country, Mexico on January 14, 2026.  According to Respondents, Petitioner claimed a fear of harm if he was removed to Mexico, and ICE ERO referred Petitioner to USCIS for credible fear processing.  Respondents stated that Petitioner was interviewed by an asylum officer for a credible fear interview on January 30, 2026, and the asylum officer determined the Petitioner does not have a credible fear of persecution or torture if he is removed to Mexico.  However, Petitioner has not been provided with a written decision regarding his credible fear interview.  Respondents state that ICE ERO is in the process of arranging Petitioner's removal to Mexico.

## B.    Procedural History

On February 29, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") against Respondents, alleging claims for: (1) detention without statutory basis; (2) violation of revocation of release regulation, 8 C.F.R. § 241.13(i)(2) and due process; (3) violation of revocation regulation, 8 C.F.R. § 241.4(1); and (4) third country removal in violation of due process.

---

[2]  Petitioner's brother and sister are United States citizens.

[3]  According to Petitioner, he submitted an application under VAWA because he experienced domestic violence from his United States citizen spouse.  Petitioner states that he has received psychological treatment due to domestic violence and depression.

[4]  Respondents submitted the declaration of Miguel Russi ("Russi"), a Deportation Officer assigned to the ICE ERO Los Angeles Field Office, with their Opposition.  Russi's declaration is not based on his own personal knowledge, but his review of Petitioner's alien file ("A-file").  Respondents failed to submit any of the documents referenced in Russi's declaration as exhibits.

Initials of Deputy Clerk _sr_

## II.    Legal Standard

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20).  Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017).  Prohibitory injunctions maintain the status quo, preventing further constitutional violations.  *Id.* at 997.  By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)).  A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'"  *Id*. (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).  Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'"  *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879).  Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant."  *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

## III.    Discussion

In his Application, Petitioner seeks on Order from this Court: (1) ordering Respondents to immediately release Petitioner under the terms of his prior OSUP; (2) enjoining Respondents from detaining Petitioner without a hearing before a neutral adjudicator; (3) enjoining Respondent from removing Petitioner to a third country absent notice and an opportunity to apply for protection for asylum, withholding of removal, or the Convention Against Torture; and (4) ordering Respondents to show cause why a preliminary injunction should not issue.

In this case, the Court concludes that Petitioner has not met his burden to establish that he is likely to succeed on the merits, or to show serious questions going to the merits, of his claims.

Initials of Deputy Clerk __sr__

*Winter*, 555 U.S. at 22.  Although a Court may grant a TRO based on "evidence that is less complete than in a trial on the merits" (*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)), Petitioner relies solely on argument and factual allegations that lack evidentiary support.  The only evidentiary support offered is the Declaration of Petitioner's attorney Stacy Tolchin ("Tolchin"), which fails to provide any factual allegations related to Petitioner's entry into the United States, Petitioner's time in the United States (including Petitioner's ties to the community, work history, or where and with whom he resides), Petitioner's history of checking in with ICE, or his re-detention by ICE.  In addition, to the extent that Petitioner relies on the factual allegations contained in his Petition, the Petition contains the same meager factual allegations contained in his Application and those allegations are not verified by Petitioner or anyone with personal knowledge of the facts. Indeed, Petitioner's Petition does not appear to be verified at all.  Similarly, Tolchin submitted a supplemental declaration with Petitioner's Reply, which is also devoid of any factual allegations. Although Petitioner submitted a few exhibits with Tolchin's two declarations, the documents related to Petitioner, including his OSUP, his Employment Authorization Document, and Petitioner's declaration from his asylum application, have not been authenticated.  In addition, the information that the Court can ascertain from those documents – that Petitioner was released on an OSUP after he was ordered removed but granted a withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), preventing his removal to Honduras based on a finding that Petitioner's life or freedom would be in danger – is not disputed by Respondents and does not address the issue of Petitioner's re-detention on January 7, 2026.

The Court recognizes that at this stage of the proceedings it "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  However, the factual assertions in the Petition, Application, and Tolchin's declarations carry no weight without the verification of someone with personal knowledge.  *See K-2 Ski Co. v. Head Ski* Co., 467 F.2d 1087, 1088 (9th Cir. 1972) (concluding that a district court may consider allegations in a verified complaint at the preliminary injunction stage).  Because Petitioner has provided the Court with insufficient evidence, Petitioner has not met his burden to establish a likelihood of success, or serious questions going to the merits, on his claims, and, as a result, his Application must be denied. *See Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements") (citation modified).

## IV.    Conclusion

For all of the foregoing reasons, Petitioner's Application for a temporary restraining order, including his request for the issuance of an order to show cause as to why a preliminary injunction should not issue, is **DENIED**.  To the extent that Petitioner contends he is entitled to additional relief, he may seek such relief through his Petition pending before the Magistrate Judge.

IT IS SO ORDERED.

Initials of Deputy Clerk  _sr_